Betty ADAIR, Plaintiff,

v.

James E. "Sam" JOHNSTON, Pike County Title and Abstract Company, Inc., and Mony Life Insurance Company, Defendants.

Civil Action No. 2:03cv731–T.

United States District Court,
M.D. Alabama,
Northern Division.

April 27, 2004.

Kenneth W. Hooks, David Hodge, Pittman, Hooks, Dutton, Kirby & Hellums PC, Jeffrey S. Daniel, Birmingham, AL, for plaintiff.

Stephen E. Whitehead, Mark E. Tindal, Erin Elizabeth May, Lloyd, Gray & Whitehead, P.C., James S. Christie, Jr., Stacey T. Bradford, Bradley, Arant, Rose & White LLP, Birmingham, AL, for defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Betty Adair brought this lawsuit against defendants James E. "Sam" Johnston, Pike County Title and Abstract Company, Inc., and MONY Life Insurance Company, claiming violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001–1461. Jurisdiction over Adair's claim is proper under 28 U.S.C.A. § 1331 (federal question) and 29 U.S.C.A. § 1332(e) and (f) (ERISA).

This cause is now before the court on Adair's motion for class certification and MONY's motion for summary judgment. For the reasons that follow, the class-certification motion will be denied, and the summary-judgment motion granted.

## I. BACKGROUND

From 1978 until 1989, Adair worked for two attorneys, one of whom bought the law practice from the other one during that period. Her employers paid the premiums on a $ 15,000 New York Life whole-life insurance policy of which Adair was the owner and her children were the beneficiaries. In 1989, Adair went to work as an abstractor and loan closing officer for Johnston and his company, Pike County Title and Abstract. According to Adair, Johnston told her that he would continue to pay the premiums on her whole-life insurance policy and also that he would provide her with a retirement package.

Because Johnston was an agent for MONY, he required that Adair transfer her whole-life insurance policy from New York Life to MONY ("the first MONY policy"). At first, Johnston and Pike County Title were listed as the beneficiaries of this new policy. But since September 2002, Adair has been the owner and rights holder of this policy, and her children have been the beneficiaries.

The policy history for the first MONY policy lists two cash-premium payments. The first was made at the time of the application for the policy; and it was funded by cashing out Adair's New York Life whole-life insurance policy.[1] The second was an annual premium payment in 1990.[2] From 1991 until 1996, the premiums on Adair's policy were paid from the policy's dividends; in 1997, the premium was paid by an automatic premium loan; in 1998 and 1999, the premiums were waived; and, since 2000, the premiums have been paid by automatic premium loans.[3]

As stated, Adair says Johnston told her that he would furnish her with retirement benefits as well. According to Adair, Johnston simply promised her that he would provide retirement benefits for her near her after-tax income. Johnston, on the other

---

1. Adair Aff., filed September 12, 2003 (Doc. No. 17) (Adair Aff.), ¶ 7; Johnston Aff., filed August 29, 2003 (Doc. No. 13) (Johnston Aff.), ¶ 11.

2. Johnston Aff. at ¶ 11.

3. D'Arrigo Aff., filed August 29, 2003 (Doc. no. 15) (First D'Arrigo Aff.), Exh. D, policy history for policy number 13291406, p. MONY 0006–0008.

hand, asserts that, at the time Adair came to work for him, they agreed that Pike County Title would provide Adair with retirement benefits through deferred compensation and that this deferred compensation would be funded through a second MONY life-insurance policy ("the second MONY policy"). Pike County Title paid the premiums on the second MONY policy from 1989 until Adair retired in 1997.[4] According to Johnston, Adair approached him in 1997 about retiring, at which time she told Johnston that she required $ 1,200 a month to pay her bills.[5] Johnston says that he explained to Adair that retiring early would deplete the cash value of the second MONY policy used to fund her retirement. After Adair's retirement, Pike County Title paid Adair's monthly benefit from its own funds and then reimbursed itself with a loan from the second MONY policy.[6]

From 1998 until 2000, the premiums on the second MONY policy were waived; in 2000 and 2001, the premiums were paid by loans on the policy.[7] In 2000, Pike County Title reduced Adair's benefits to $ 800 per month, and then reduced them further to $ 500 per month in March 2002; in October 2002, Pike County Title stopped paying her benefits.[8] In 2002, the second MONY policy ceased.

MONY states that the second MONY policy had a $ 200,000 death benefit or its cash value as deferred compensation for Adair's retirement. MONY further states that Adair received $ 43,573.37 from this policy, which was its cash value.

Adair brought this lawsuit in state court, asserting state-law claims of fraud, suppression, breach of contract, conversion, breach of fiduciary duty, and negligence. The defendants removed the case to this court asserting that Adair's claims were pre-empted by ERISA. Adair moved to remand. In October 2003, this court ruled that Adair's claims were pre-empted by ERISA and denied her motion to remand. *Adair v. Johnston,* 2003 WL 23469844 (M.D.Ala.2003) (Thompson, J.).

After Adair's motion to remand was denied, MONY moved for summary judgment, asserting that her state-law claims against it were pre-empted by ERISA and that she had received all the benefits due to her under the life-insurance policies. Adair did not respond to the motion for summary judgment; instead, she amended her complaint to assert an ERISA class-action claim against MONY and individual ERISA claims against Johnston and Pike County Title. Because Adair was no longer pursuing any state-law claims, this court denied MONY's summary-judgment motion as moot.

MONY then filed another motion for summary judgment, this time on Adair's ERISA claim, and it is this motion that is now before the court. Adair also filed a motion for class certification, and this motion is before the court as well.

## II. MOTION FOR CLASS CERTIFICATION

### A. Timing of class-certification motion

Generally speaking, courts should address motions for class certification before ruling on dispositive motions. This is in part because Fed.R.Civ.P. 23(c)(1)(A) states that when a person sues as a representative of a class, the court "must—at an early practicable time—determine by order whether to certify the action as a class action."[9] Another reason for the rule is fairness to defendants: if a defendant wins on the liability issue before a class is certified, it is denied the binding effect of that ruling on the other potential class members; while if it loses on the liability issue, that holding will be binding on a class whose size is not yet known.

---

4. *Id.*, Exh. A, policy history for policy number 13322185, p. MONY 0001; Johnston Aff. at ¶ 7.

5. Johnston Aff. at ¶ 5.

6. *Id.*

7. First D'Arrigo Aff., Exh. A at MONY 0001–0003.

8. Plaintiff's memorandum brief in support of motion to remand, filed September 2, 2003 (Doc. No. 16), at 7–8.

9. Fed.R.Civ.P. 23(c) was amended effective December 1, 2003. The old version of the rule stated that a court should resolve a motion for class certification "as early as practicable."

James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.61[3]; *see also Gonzalez–Sanchez v. International Paper Co.*, 346 F.3d 1017, 1023 (11th Cir.2003) (reversing a district court's holding that a motion for class certification was moot because "a plaintiff's capacity to act as representative of a class is not necessarily terminated when he loses his case on the merits"); *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992) ("A string of cases in this circuit reinforces the message of Rule 23(c)(1): The court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiffs' legal theory"); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir.1995) ("district courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified"); *but cf. Thornton v. Mercantile Stores Co.*, 13 F.Supp.2d 1282, 1289 (M.D.Ala.1998) (DeMent, J.) ("the vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification"). Thus, this court will first address Adair's motion for class certification, and will then turn to MONY's motion for summary judgment.

### B. Merits of class-certification motion

█ In order for a party to represent a class, "the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970). This means that the description of the class "must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.21[1]; *accord Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir.1986); *Pottinger v. City of Miami*, 720 F.Supp. 955, 957 (S.D.Fla.1989).

█ Adair's motion for class certification is due to be denied because she has not adequately defined the purported class. Adair describes the class she would represent as follows: "[P]laintiff respectfully moves the court that this suit be maintained as a class on behalf of a class consisting of: (i) Plaintiff seeks a reformation of all Whole Life insurance policies issued by MONY from January 1, 1985 to the present date that fail to contain the ERISA statutory language as identified in the Complaint and that 'relate to' any employer plan." [10] While this definition does not explicitly state as much, Adair's class could logically include only the policyholders of whole-life insurance policies that are covered by ERISA, since her claim is based on ERISA.

The only evidence Adair has submitted in support of her class-certification motion is an SEC filing by MONY. The SEC filing states that MONY has "657,547 Whole Life participating life insurance policies in force as of December 31, 2002." [11] Adair asserts, citing no evidence, that perhaps 1 % of the holders of these policies might "relate to employer benefits" and thus be in the class.[12]

█ Not all life-insurance policies are part of ERISA plans. MONY has submitted evidence that most life-insurance policies are purchased directly by individuals;[13] these are not covered by ERISA. Other life-insurance policies are purchased through payroll deduction, and these may not be covered by ERISA when employers are not involved. *Lott v. Metropolitan Life Ins. Co.*, 849 F.Supp. 1451, 1454 (M.D.Ala.1993) (Thompson, J.). Other life-insurance policies that are purchased by employers are not for an employee's benefit, and thus may also not be covered by ERISA.[14]

█ Adair does not explain how this court could go about determining whether any particular one of MONY's 657,547 whole-life insurance policies was part of an ERISA plan without doing the same kind of fact-intensive

---

10. Plaintiff's motion for class certification, filed Dec. 12, 2003 (Doc. no. 32), at 1.

11. Plaintiff's brief in support of motion to certify class action, filed Jan. 9, 2004 (Doc. no. 39), at 5.

12. *Id.*

13. D'Arrigo Aff., filed Dec. 17, 2003 (Doc. no. 34) (Second D'Arrigo Aff.), at ¶ 5.

14. *Id.*

analysis that was necessary, for instance, to determine if her life-insurance policies were part of an ERISA plan. When individualized fact-finding and litigation would be necessary in order to identify class members, class certification is inappropriate. *Crosby v. Social Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir.1986).

Because Adair's putative class is not adequately definite and ascertainable, class certification should be denied. The court need not reach whether Adair's putative class would satisfy the other requirements of Fed. R.Civ.P. 23.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Summary-judgment standard

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

#### B. Merits of summary-judgment motion

Adair alleges that MONY failed to satisfy "ERISA notice and reporting requirements for Whole Life insurance policies." [15] Among the "notice and reporting requirements" that she alleges MONY violated are providing "periodic and/or annual report filing for Whole Life policies," a "Summary Plan Description," a "Summary Annual Report," and "the statutory free access to all 'plan' documents." [16]

MONY argues that it is entitled to summary judgment on two grounds. First, MONY argues that Adair lacks standing to assert a claim against it for violations of ERISA's disclosure requirements since Adair is not asserting a claim for benefits against it. Second, MONY argues that it was not required to perform any ERISA reporting or disclosure for Adair's plan because it was not the plan administrator.

#### 1. Standing

■ MONY's argument that Adair does not have standing to bring her claim is without merit. MONY construes two cases, *Fire-*

---

**15.** Plaintiff's first amended complaint, filed December 8, 2003 (Doc. no. 30), at ¶ 1.

**16.** Specifically, Adair charges that MONY: (1) failed to "comply with the ERISA reporting requirements identified at 29 U.S.C.A. §§ 1021–1031"; (2) failed to provide "periodic and/or annual report filing for Whole Life policies with the Department of Labor and complied with Title I of ERISA"; (3) "failed to adequately distribute a Summary Annual Report to plan participants and failed to comply with Title I of ERISA for Whole Life policies"; (4) "failed to utilize any uniform policy endorsement in the Whole Life

policies to notify participants of their statutory ERISA rights"; (5) "failed to establish any internal procedures for providing a fair and impartial review of ERISA claims for Whole Life insurance policies that 'relate to' an employer benefit plan"; (6) "failed to notify ERISA participants and beneficiaries of their right to seek free access to all 'plan' documents"; and (7) "uniformly breached its fiduciary duties by failing to provide the ERISA statutory notice requirements to policyholder participants." Plaintiff's first amended complaint, filed December 8, 2003 (Doc. no. 30), at ¶¶ 22–28.

stone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and *Daughtry v. Birdsong Peanuts,* 168 F.Supp.2d 1287 (M.D.Ala.2001) (DeMent, J.), as holding that Adair cannot sue MONY for injunctive relief unless she is also suing MONY for money benefits.[17] However, *Bruch* and *Daughtry* do not stand for this proposition. In *Bruch,* the Supreme Court set about to interpret the ERISA provision that gives an ERISA cause of action to plan participants and beneficiaries, 29 U.S.C.A. § 1132; the Court held that, in order to be a "participant or beneficiary" with the standing to bring an ERISA claim, a plaintiff must not be simply "someone who claims to be a participant or beneficiary," but must be "either [an] employee in, or reasonably expected to be in, currently covered employment, or [a] former employee who [has] ... a reasonable expectation of returning to covered employment or [has] a colorable claim to vested benefits." *Bruch,* 489 U.S. at 117–18, 109 S.Ct. at 958. The court in *Daughtry* applied the *Bruch* rule to the question of whether certain claimants were "beneficiaries." Neither case states that a person who is a participant or beneficiary must sue a defendant for benefits in order to have standing to sue it for violations of ERISA's notice and reporting requirements. Moreover, ERISA's statutory language clearly gives plan participants the right to sue for violations of its reporting and disclosure requirements independent of their right to sue for benefits. 29 U.S.C.A. § 1132(a); 29 C.F.R. §§ 2520.101–1 through 2520.107–1.

Thus, ERISA allows Adair to sue for injunctive relief for violations of ERISA's reporting and disclosure requirements if she is a plan "participant." As this court stated when it found that Adair's state-law claims were preempted by ERISA, Adair is a "participant" in both MONY life-insurance policies. She is a participant in the first policy because she is the rights-holder and her beneficiaries are entitled to the proceeds of the life-insurance policy upon her death. *Adair v. Johnston,* 2003 WL 23469844 *2 (M.D.Ala. 2003) (Thompson, J.). The question of whether Adair is a participant under the second policy is slightly more difficult since MONY contends that she is not entitled to any other benefits under that policy.[18] However, Adair contends that she is entitled to additional benefits under the second plan because she and Johnston had an oral contract that Johnston would provide her with retirement benefits. *Id.* This is a colorable claim for benefits and thus gives Adair the standing to sue as a "participant" in this plan. *Bruch,* 489 U.S. at 117–18, 109 S.Ct. at 958. The requirement of a "colorable" claim "is not a stringent one"; it requires only an arguable claim, not necessary success. *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 790 (7th Cir.1996).

Adair also has constitutional standing to pursue her claim for injunctive relief against MONY. In order to have standing, a plaintiff must show (1) she has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the conduct of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Kelly v. Harris,* 331 F.3d 817, 819–20 (11th Cir.2003). It is well-established that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating

---

**17.** Defendant MONY's supplemental opposition to motion for class certification and memorandum in support of motion for summary judgment, filed Feb. 6, 2004 (Doc. no. 49), at 2.

**18.** MONY's argument that Adair is not entitled to any further benefits under the second MONY policy also raises the question of whether Adair's claim against MONY is moot because any changes in the notice MONY gives to plan participants would not help Adair, since the second MONY plan has expired. However, for the same reasons that Adair has standing to maintain this suit, the suit is not moot. First, Adair is still unquestionably entitled to benefits under the first MONY insurance policy, so she could benefit from any changes in MONY's notice and reporting practices because of this policy. Second, if Adair were to prevail in her claim against Johnston and Pike County Title for the additional benefits she claims are due her under the second MONY policy, she would similarly benefit from any changes in MONY's notice and reporting policies because of the second policy.

legal rights, the invasion of which creates standing." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

■ ERISA's disclosure requirements give plan participants the right to receive certain information. Thus, a participant "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring [a defendant] to satisfy its statutorily-created disclosure or fiduciary responsibilities." [19] *Horvath v. Keystone Health Plan East,* 333 F.3d 450, 456 (3d Cir.2003) (internal citations omitted). *See also Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1231–1232 (11th Cir.2002) ("Under 29 U.S.C.A. § 1132(c)(1), the court has the discretion to penalize a violation of the notice requirement by awarding the beneficiary or participant up to $ 100 per day ... the statute does not require a finding of prejudice to the plaintiff, although the Eleventh Circuit has stated that prejudice is a factor to be considered in determining the appropriate penalty"); *but see United Paperworkers Intern. Union v. International Paper Co.,* 777 F.Supp. 1010, 1019 (D.Me.1991) (Carter, C.J.) ("In order to have standing to complain of Defendants' reporting and disclosure violations, Plaintiffs must show some significant reliance on, or possible prejudice flowing from these reporting and disclosure violations."). MONY's alleged wrongful failure to provide Adair with required notices and disclosures constitutes an injury to Adair; that injury is traceable to MONY's failure to provide the information; and a favorable decision would redress Adair's injury by requiring MONY to provide her with the statutorily required disclosures, at least as to the first MONY policy, which is still outstanding.

### 2. Adair's claim against MONY

■ Although Adair does have standing to bring a claim against MONY, summary judgment is due to be granted because MONY is not the plan administrator for Adair's ERISA plan. Adair's allegations against MONY are based almost entirely on MONY's alleged failure to comply with ERISA's reporting and disclosure requirements. Part 1 of ERISA, 29 U.S.C.A. §§ 1021–1031, is devoted to reporting and disclosure requirements. This portion of ERISA makes "plan administrators" responsible for providing certain documents and information to plan participants and beneficiaries. Consistent with this, the section of ERISA which authorizes participants or beneficiaries to bring civil actions to enforce ERISA's reporting and disclosure requirements also makes only plan administrators liable for failure to comply with the requirements. 29 U.S.C.A. § 1132.

The caselaw agrees with the clear language of the statute that only plan administrators can be sued for violations of ERISA's notice and reporting requirements. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 n. 7, 105 S.Ct. 3085, 3089 n. 7, 87 L.Ed.2d 96 (1985) ("Part 1 [of ERISA], which consists of §§ 101–111, imposes elaborate reporting and disclosure requirements on plan administrators"); *Thorpe v. Retirement Plan of Pillsbury Co.,* 80 F.3d 439, 444 (10th Cir.1996) ("ERISA requires plan administrators to respond to informational requests by plan participants ... Such causes of action may be brought only against designated plan administrators, rather than against the plan itself or the employer ... The language of § 1132(c) ... is unambiguous and admits of no other interpretation"); *Klosterman v. Western Gen. Management, Inc.,* 32 F.3d 1119 (7th Cir.1994) ("Congress has explicitly provided that the responsibility

---

**19.** In addition to injunctive relief, Adair seeks "to disgorge all illegal profits obtained by MONY from practices that breach its fiduciary duty to plan participants." Plaintiff's first amended complaint, filed Dec. 8, 2003 (Doc. no. 30), at ¶ 31. Adair may not have standing to pursue this disgorgement remedy because it is not clear how MONY's alleged ERISA violations caused her individual financial harm. While a plan participant has standing to pursue injunctive relief based on a defendant's failure to comply with ERISA disclosure requirements, she does not have standing to seek disgorgement, an individual remedy, unless she shows an individual loss caused by the defendant's violations. *Horvath v. Keystone Health Plan East,* 333 F.3d 450, 456 (3d Cir.2003). However, it is not necessary to reach this issue because MONY is entitled to summary judgment on Adair's claim against it.

for complying with these statutory requirements falls on the plan administrator ... The case law also confirms that any cause of action for violations of these disclosure requirements is proper only against the plan administrator.")

MONY is not the plan administrator for either of Adair's ERISA plans. Neither Adair nor the defendants have identified any document indicating who is the plan administrator, and no such document appears in the record. ERISA states that the plan administrator is a person specifically designated by the terms of an ERISA plan document or, in the absence of such a designation, the plan sponsor. 29 U.S.C.A. § 1002(16)(A). The "plan sponsor" is "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C.A. § 1002(16)(B). Thus, in the absence of any designation to the contrary, Pike County Title is the "administrator" of Adair's plan. MONY's director of policyholder services also completed an affidavit stating that MONY is not, and does not act as, the plan administrator for either of Adair's MONY life-insurance plans.[20]

Adair does not present any evidence to show that MONY is the plan administrator. Indeed, Adair's only reference to MONY as a "plan administrator" comes when she says that the question of whether MONY is a " 'plan fiduciary' or 'plan administrator' ... is a common question of law applicable to the entire putative class."[21] However, she does not make any actual argument that MONY is the plan administrator.

Instead of attempting to show that MONY is the plan administrator, Adair states that MONY is a "functional fiduciary."[22] Fiduciaries do have obligations under ERISA; for instance, they must discharge their duties solely in the interests of participants and beneficiaries, 29 U.S.C.A. § 1104(a)(1)(A); they must diversify the investments of the plan, 29 U.S.C.A. § 1104(a)(1)(C); and they cannot engage in "prohibited transactions" such as "self-dealing" or transactions between the plan and a "party in interest," 29 U.S.C.A. § 1106(a) and (b). Fiduciary duties also include some duties of disclosure; for instance, "deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense" violates an ERISA fiduciary's duty because "[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries." *Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 1074, 134 L.Ed.2d 130 (1996).

However, even assuming that MONY is a fiduciary, Adair does not present any evidence that MONY violated any fiduciary duties. With one exception, discussed below, the acts or omissions that Adair accuses MONY of involve MONY's failure to provide her with information about her life-insurance plans—in other words, failure to comply with the reporting and disclosure requirements required of plan administrators. As explained above, MONY is not required to comply with these requirements. While Adair does state that MONY violated fiduciary duties, she does not present any evidence to support such a charge or even explain what alleged acts violated a fiduciary duty. In order to avoid summary judgment, Adair would have to "affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings." Fed.R.Civ.P. 56(e).

The one allegation Adair makes against MONY that does not relate to MONY's alleged failure to comply with ERISA's notice and reporting requirements is that MONY "failed to establish any internal procedures for providing a fair and impartial review of ERISA claims."[23] ERISA does require every employee benefit plan to establish a reasonable claims procedure for assessing ERISA claims. 29 U.S.C.A. § 1133, 29

---

20. Second D'Arrigo Aff., filed Dec. 17, 2003 (Doc. no. 34), at ¶¶ 3, 4, 6.

21. Plaintiff's brief in support of motion for class certification, filed Jan. 9, 2004 (Doc. no. 39), at 13.

22. Plaintiff's opposition to motion for summary judgment, filed Feb. 12, 2004 (Doc. no. 50), at 3–4.

23. Plaintiff's first amended complaint, filed Dec. 8, 2003 (Doc. no. 30), at ¶ 26.

C.F.R. § 2560.503–1(a)–(j). However, Adair does not explain why MONY, and not her employer, should be required to establish such a procedure. The statute requires that the "employee benefit plan" establish a procedure. Here, Adair's ERISA plan was established by her employer. All MONY did was to sell Pike County Title two life-insurance policies and to abide by the terms of the contracts; MONY was not involved in the agreement between Adair and Johnston about deferred compensation.

Further, ERISA regulations contemplate that the plan *administrator* will notify claimants of adverse benefit determinations. 29 C.F.R. §§ 2560.503–1(f), (g), (i), (j). As discussed above, there is no evidence that MONY is the plan administrator; it appears that Pike County Title is.

### IV. CONCLUSION

For the foregoing reasons, Adair's motion for class certification will be denied, and MONY's motion for summary judgment will be granted. An appropriate judgment will be entered.[24]

### JUDGMENT

For the reasons given in the opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motion for class certification, filed by plaintiff Betty Adair on December 12, 2003 (Doc. no. 32), is denied.

(2) The motion for summary judgment, filed by defendant MONY Life Insurance Company on January 23, 2004 (Doc. no. 40), is granted.

(3) Judgment is entered in favor of defendant MONY Life Insurance Company and against plaintiff Adair, with plaintiff Adair taking nothing by her complaint against defendant MONY Life Insurance Company.

(4) Plaintiff Adair's complaint to the extent she asserts a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461, against defendants James E. "Sam" Johnston, Pike County Title and Abstract Company, Inc. is still pending.

It is further ORDERED that costs are taxed against plaintiff Adair, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

---

**24.** Adair's complaint to the extent she asserts an ERISA claim against Johnston and Pike County Title is still pending.